**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EUGENE MAZO,

                Plaintiff,

          v.

**CHRISTOPHER J. DURKIN**, in his official capacity as Essex County Clerk, *et al.*,

                Defendants.

Civil Action No. 20-08336 (ZNQ) (TJB)

**OPINION**

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon motions to dismiss by Joanne Rajoppi in her official capacity as Union County clerk and Tahesha Way in her official capacity as the New Jersey Secretary of State (the "Motions"). Plaintiff Eugene Mazo sued in this Court alleging constitutional concerns with the New Jersey primary election system. Plaintiff alleges that the New Jersey "bracketing system" violates his First Amendment rights[1], the Elections Clause of the U.S. Constitution, and the Qualifications Clause of the U.S. Constitution. His claims are brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and 42 U.S.C. § 1983. The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the following reasons, the Court denies the Motions but *sua sponte* dismisses the Amended Complaint for lack of standing.

---

[1] Plaintiff correctly pleads his First Amendment injuries via the Fourteenth Amendment. For the sake of brevity only, the Court omits regular reference to the Fourteenth Amendment.

1

I.      **BACKGROUND AND PROCEDURAL HISTORY**

The matter arises out of the 2020 Democratic primaries and the New Jersey laws that affect candidate placement on the ballot. ("Amended Complaint" or "Am. Compl.," ECF No. 43 ¶ 1.) New Jersey allows multiple candidates who seek a party's nomination for the same office to request that their names be grouped together on the ballot, with a common ballot slogan printed opposite their names. ("Am. Compl.," ECF No. 43 ¶ 73.) If a county candidate files a "joint petition" with the county clerk and "choose[s] the same designation or slogan" for their primary election, the clerk must have the names "drawn for position on the ballot as a unit" and must have their names "be placed on the same line" or column of the ballot by the county clerk. (*Id.* ¶ 75.) A candidate must make this request within two days of the deadline for filing the joint petition. (*Id.* ¶ 81.) The clerk then notifies the campaign manager of the other "joint petition" county candidates of the bracketing request, at which point their campaign manager has two days to consent to the request in writing. (*Id.*) After consent by the campaign managers for all "joint petition" candidates, the candidates become "bracketed." (*Id.* ¶ 83.) This ballot bracketing system (hereby the "Bracketing Structure") is at the heart of this matter. (*Id.* ¶ 85.)

Plaintiff Eugene Mazo ran in the Democratic primary for the U.S. House of Representatives. (*Id.* ¶ 28.) Plaintiff filed a valid petition to appear on the Democratic primary ballot in New Jersey's Tenth Congressional District, which encompasses Essex, Hudson, and Union counties. (*Id.* ¶ 42.) Each county clerk's office conducted its ballot draw on the same day. (*Id.* ¶ 43.)

With respect to federal candidates, Defendant Christopher J. Durkin, the Essex County clerk, drew first for the positions of the U.S. Senate candidates, then U.S. President candidates, and finally for U.S. Congress candidates. (*Id.* ¶¶ 44–48.) One of Plaintiff's primary candidate

opponents was placed in row A because he bracketed with U.S. Senator Cory Booker ("Booker"), who was drawn first in the preferential ballot draw. (*Id.* ¶ 44.) With respect to non-bracketed U.S. Congress candidates, Plaintiff's name was drawn first and should have gone in row D. (*Id.* ¶ 48.) On the ballot, Mazo's name appeared in row C, the same row as U.S. Presidential candidate Bernie Sanders. (*Id.* ¶ 49.) Plaintiff had not requested to bracket with Sanders, had a different ballot slogan from Sanders, and did not share many of Sander's views. (*Id.*)

With respect to federal candidates, Defendant E. Junior Maldonado, the Hudson County clerk, drew for the U.S. Senate positions, then U.S. President candidates, and finally for U.S. Congress candidates. (*Id.* ¶ 52–55.) The primary candidate opponent who bracketed with Booker was placed in row B on the Hudson County ballot because Booker was drawn second in the preferential ballot draw. (*Id.* ¶ 54.) Plaintiff was placed in row D because he was drawn first in the non-preferential ballot draw. (*Id.* ¶ 56.)

Given that Defendant Joanne Rajoppi was up for re-election as Union County clerk, she opted not to conduct the ballot draw herself and delegated the drawing to a deputy. (*Id.* ¶ 58.) Rajoppi's deputy drew first for the positions of the U.S. Senate candidates, then county freeholder candidates, and finally for U.S. Congress candidates. (*Id.* ¶¶ 58–61.) However, Plaintiff's name was drawn in the Republican draw rather than the Democratic draw. (*Id.* ¶ 62.) When contacted by Plaintiff, the Union County clerk's office admitted its mistake, denied his request to conduct a new ballot draw, and instead told him that he could only be placed at the end of the Democratic primary election ballot. (*Id.* ¶ 64.) Plaintiff was then placed in Column E with uncommitted U.S. Presidential delegates and, in some municipalities, with candidates running for municipal office, even though Plaintiff did not request to bracket with these candidates and had a different ballot slogan. (*Id.* ¶ 67.)

Plaintiff sued Durkin in his official capacity as Essex County clerk, Maldonado in his official capacity as Hudson County clerk, Rajoppi in her official capacity as Hudson County clerk, and Way in her official capacity as the New Jersey Secretary of State (collectively, the "Defendants"). (ECF No. 1.) After filing a consent order with the Court (ECF No. 39), Plaintiff filed the Amended Complaint. Plaintiff alleges that the primacy effect provides bracketed candidates with a significant electoral advantage when compared to non-bracketed candidates. (*Id.* ¶¶ 99–102.) The primacy effect (also known as "positional bias") is a phenomenon where a significant percentage of people will demonstrate a bias toward choosing the candidate whose name is listed first. (*Id.* ¶ 99.) Plaintiff alleges that bracketed candidates, who will be placed into the first few columns on the bracket, consistently receive the benefits of the primacy effect solely due to their position on the ballot. (*Id.* ¶¶ 101–102.) Plaintiff alleges that no unbracketed candidate who has run for U.S. Congress from New Jersey has managed to win a primary election in the past thirty years. (*Id.* ¶ 8.)

Count One of the Amended Complaint alleges that the Bracketing Structure violates his First Amendment rights and is therefore unconstitutional. (*Id.* ¶¶ 111–131.) Plaintiff alleges that his right not to associate is burdened by the State's decision to protect a candidates' right to associate. (*Id.* ¶ 115.) Plaintiff's Count Two alleges the Bracketing Structure violates the Qualification Clause of the U.S. Constitution because it imposes an additional qualification for candidates running for the U.S. House of Representatives (i.e., bracket with other candidates on the primary ballot). (*Id.* ¶ 136.) Plaintiff's Count Three alleges the Bracketing Structure violates the Elections Clause because it is not a mere procedural regulation and instead dictates electoral outcomes. (*Id.* ¶ 150–151.) Finally, Plaintiff's Count Four alleges a violation of 42 U.S.C. § 1983

because Defendants, acting under the color of law, deprived Plaintiff of his First Amendment rights. (*Id.* ¶ 165.)

Rajoppi filed a motion to dismiss ("Rajoppi Motion," ECF No. 48) and a supporting brief ("Rajoppi Br.," ECF No. 48-1), which was joined by Durkin (ECF No. 49). Way filed a motion to dismiss ("Way Motion," ECF No. 53) and a supporting brief ("Way Br.," ECF No. 53-1). Defendant Maldonado did not file a motion with respect to the Amended Complaint.[2] Plaintiff filed an opposition brief to the Rajoppi Motion ("Opp'n Br. to Rajoppi," ECF No. 54), to which Rajoppi replied ("Rajoppi Reply Br.," ECF No. 56). Plaintiff also filed an opposition brief to the Way Motion ("Opp'n Br. to Way," ECF No. 55), to which Way replied ("Way Reply Br.," ECF No. 57).

## II.   **LEGAL STANDARD**

Under Rule 12(b)(1), a court may dismiss a claim if it lacks subject-matter jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006), and to "raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Group Against Smog and Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 122 n.5 (3d Cir. 2016) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)). A Rule 12(b)(1) motion can raise a facial attack or a factual attack, which determines the standard of review. *Mazo v. Way*, 551 F. Supp. 3d 478, 489 (D.N.J. 2021) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014)).

---

[2] Defendant Maldonado filed a Motion for Summary Judgement (ECF No. 29) with respect to the initial complaint but did not file a motion with respect to the Amended Complaint.

A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal question . . . or because some other jurisdictional defect is present." *Constitution Party*, 757 F.3d at 357.  In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Id.* at 358.  "A factual attack concerns the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites." *CAN v. United States*, 535 F.3d 132, 139 (3d Cir. 2008); *see id.* ("So, for example, while diversity of citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity is lacking.")  When considering a factual challenge, "the plaintiff [has] the burden of proof that jurisdiction does in fact exist," the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and "no presumptive truthfulness attaches to [the] plaintiff's allegations . . . ." *Mortenson v. Fest Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## III.   DISCUSSION

Article III standing has three well-recognized elements; injury, causality, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  A plaintiff must plead an actual or imminent "injury in fact" or an "invasion of a legally protected interest" that is "concrete and particularized." *Id.* at 560.  "It is fair to say that plaintiffs relying on claims of imminent harm must demonstrate that they face a realistic danger of sustaining a direct injury from the conduct of which they complain." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014).  An invasion of a legally protected interest is "concrete" if it is real, or distinct and palpable, as opposed

6

to merely abstract, and is sufficiently particularized if "it affect[s] the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1).

Rajoppi, Durkin, and Way argue that Plaintiff's claims fail under Rule 12(b)(1) because Plaintiff's claims are moot or not ripe for review.  (Rajoppi Br. at 9–12; Rajoppi Reply at 4–9; Way Br. at 5–10; Way Reply at 2–5.)  Rajoppi, Durkin, and Way do not argue that Plaintiff does not sufficiently plead an Article III injury; as such, the Court must conduct a facial review of the Amended Complaint to decide if the Court can hear his case.  If the Court finds there is no Article III standing, then it may dismiss the case *sua sponte* because it has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh*, 546 U.S. at 514.  At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice. *Blunt*, 767 F.3d at 279.  "The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege [] some specific identifiable trifle of injury." *Id.* at 278 (citation and internal quotation marks omitted).

This Court allowed a similar challenge to the Bracketing Structure to survive a motion to dismiss in *Conforti, et al. v. Hanlon, et al.*, Civ No. 20-08267, 2022 WL 1744774, at *8 (D.N.J. May 31, 2022).  There, the plaintiffs alleged that the Bracketing Structure burdened certain First Amendment rights, alleged the Bracketing Structure violated the Elections Clause, and provided a study on the primacy effect in ballots with similar characteristics as the Balloting Structure. *Id.* The Court was satisfied that the plaintiffs' allegations, coupled with the study, provided a plausible injury-in-fact and stated a claim sufficient to survive several motions to dismiss. *Id.*

Here, Plaintiff provides allegations that the primacy effect (or positional bias) gives bracketed candidates an advantage in elections that unbracketed candidates do not receive. (Am.

Compl. ¶¶ 99–109.)   However, Plaintiff does not provide a study or any other support showing that the primacy effect exists in New Jersey elections.   If certain classes of candidates consistently receive ballot placement benefits, then the conferment of such benefits can indicate a constitutional injury. *See Democratic-Republican Organization of New Jersey v. Guadagno*, 900 F.Supp.2d 447, 457 (D.N.J. 2012) (rejecting plaintiff's ballot placement argument because "[p]laintiffs provide *no* evidence that demonstrates that certain ballot placements confer any benefit . . . .").

Such support on primacy effects may show that Plaintiff faces "a realistic danger of sustaining a direct injury from the conduct of which they complain." *Blunt*, 767 F.3d at 278.   If the lack of benefits from a ballot placement is an invasion of a legally protected injury, a study provides the Court assurance that the injury is real and particularized. *See id*.   Without same, the injury here appears only speculative, not plausible. *See, e.g., Nelson v. Warner*, 446 F. Supp. 3d 119, 123 (S.D. W. Va. 2020), aff'd, 12 F.4th 376, 385 (4th Cir. 2021) ("While the benefit of an advantageous ballot position is not necessarily a constitutional concern, a politically biased and discriminatory allocation of that benefit is."); *Mecinas v. Hobbs*, 30 F.4th 890, 897 (9th Cir. 2022) (doctrine of competitive standing provided injury-in-fact); *Mazo*, 551 F.Supp.3d at 508 n.12 ("[I]t is appropriate to decide Plaintiffs' claims at the dismissal stage because they do not assert a factual burden (*i.e.*, that it is difficult to obtain consent) but rather a legal burden (*i.e.*, that they have to ask for consent in the first place).   Given that Plaintiff's First Amendment right claim, Election Clause claim, and Qualification Clause claim are predicated on the primacy effect without any support, Plaintiff's Amended Complaint does not plausibly allege an Article III injury on its face.

IV.     **CONCLUSION**

For the reasons stated above, the Court denies the Rajoppi Motion and Way Motion but *sua sponte* dismisses the Amended Complaint without prejudice for a failure to plead an Article III injury.  An appropriate Order will follow.

Date: **June 22, 2022**

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE