UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | |
|---|---|
| EUGENE MAZO,<br><br>*Plaintiff*,<br><br>v.<br><br>CHRISTOPHER J. DURKIN, in his official capacity as Essex County Clerk, et al.,<br><br>*Defendants*. | Civil Action<br><br>3:20-cv-08336-ZNQ-TJB<br><br>MEMORANDUM OF LAW OF PLAINTIFF EUGENE MAZO IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION<br>.<br><br>**RETURN DATE: AUG. 1, 2022** |

Walter M. Luers, Esq.
COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
(201) 845-9600, ext. 144
wml@njlawfirm.com
*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

FACTS AND PROCEDURAL HISTORY ...............................................................................1

LEGAL ARGUMENT .........................................................................................................2

    I.   Federal Rules 59 and 60 and Local Rule 7.1 Are The Proper Vehicles For This Motion ..2

    II.  When A Court Dismisses A Complaint Without Prejudice, It Must Grant Plaintiff Leave to Amend, Unless The Amendment Would Be Futile ........................................................4

    III. Amending Plaintiff's Complaint Here Would Not Be Futile ............................................5

CONCLUSION .................................................................................................................10

## TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ..................................................................................................2n

*Banister v. Davis*,
 140 S. Ct. 1698 (2020)................................................................................................3

*Borelli v. City of Reading*,
 532 F.2d 950, 951 n.1 (3d Cir. 1976) .........................................................................4

*Conforti, et al. v. Hanlon, et al.*,
 Civ. No. 20-08267, 2022 WL1744744 (D.N.J)............................................. 1, 6, 9

*Darr v. Wolfe*,
 767 F.2d 79 (3d Cir. 1985)..........................................................................................4

*District Council 47 v. Bradley,*
 795 F.2d 310 (3d Cir. 1986)........................................................................................4

*Glassman v. Computervision Corp.*
 90 F.3d 617, 623 (3rd Cir. 1996)................................................................................5

*Grayson v. Mayview State Hosp.*,
 293 F.3d 103 (3d Cir. 2002).......................................................................................5

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,
 507 U.S. 163 (1993) ...................................................................................................1

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ...................................................................................................1

*Kemp v. United States*,
 596 U. S. ___ (2022) (slip op.)...................................................................................3

*Phillips v. Cnty. of Allegheny*,
 515 F.3d 224 (3d Cir. 2008).......................................................................................5

*Shane v. Fauver*,
 213 F.3d 113 (3d Cir. 2000)...................................................................................4, 5

*United States v. Fiorelli*,
 337 F.3d 282 (3rd Cir. 2003) .....................................................................................3

*White v. New Hampshire Dept. of Employment Security*,
    455 U.S. 445 (1982) ........................................................................................................3

CONSTITUTION AND AMENDMENTS

U.S. Const. amend. I .............................................................................................................1

U.S. Const. amend. XIV........................................................................................................1

FEDERAL RULES

Fed. R. Civ. P. 8(a)(1) ....................................................................................................... 1, 2

Fed. R. Civ. P. 8(a)(2) ...........................................................................................................1

Fed. R. Civ. P. 12(b)(1).........................................................................................................1

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 1, 5

Fed. R. Civ. P. 59(e)..................................................................................................... 2, 3, 10

Fed. R. Civ. P. 60(a).......................................................................................................2, 10

Fed. R. Civ. P. 60(b)(1) ................................................................................................ 2, 3, 10

LOCAL RULES

Local Civ. R. 7.1(i) ....................................................................................................... 2, 3. 10

SCHOLARLY STUDIES

Matt Anderson, *Drawing the Line: The Politics of New Jersey's Ballot Design*,
    Manuscript, Seton Hall University School of Law (2022) ............................................8, 9

Erik J. Engstrom and Jason M. Roberts, THE POLITICS OF BALLOT DESIGN: HOW STATES SHAPE
    AMERICAN DEMOCRACY (Cambridge University Press 2020)..........................................9

Daniel E. Ho & Kosuke Imai, *Estimating Causal Effects of Ballot Order from a Randomized
    Natural Experiment: The California Alphabet Lottery, 1978-*2002,
    72 PUBLIC OPINION QUARTERLY 216 (2008) ...................................................................9

Jonathan Koppell & Jennifer A. Steen, *The Effects of Ballot Position on Electoral Outcomes*,
    66 JOURNAL OF POLITICS 267 (2004)..............................................................................10

Joanne M. Miller, *The Electoral Effects of Ballot Design: An Executive Summary* (2020) ........... 6

Joanne M. Miller & Jon A. Krosnick. *The Impact of Candidate Name Order on Election Outcomes*, 62 PUBLIC OPINION QUARTERLY 291 (1998) ................................................. 10

Laura Miller, *Election by Lottery: Ballot Order, Equal Protection, and the Irrational Voter*, 13 LEGISLATION AND PUBLIC POLICY 373 (2010) .......................................................... 10

Brett Pugach, *The County Line: The Law and Politics of Ballot Positioning in New Jersey*, 72 RUTGERS LAW. REVIEW 629 (2020) ............................................................................ 9

Julia Sass Rubin, *Does the County Line Matter? An Analysis of New Jersey's 2020 Election Results*, N.J. POL'Y PERSPECTIVE (Aug. 13, 2020) ......................................................... 6, 7

Julia Sass Rubin, *Toeing the Line: New Jersey Primary Ballots Enable Party Insiders to Pick Winners*, N.J. POL'Y PERSPECTIVE (June 2020) ................................................................ 7

NEWSPAPER ARTICLES

Ronald Chen and John Farmer, Jr., *New Jersey's Primary Ballot Are Rigged*, THE STAR-LEDGER (July 27, 2021) ................................................................................. 7

Joey Fox, *Geography and Ballot Design Shaped New Jersey's Congressional Primaries*, N.J. GLOBE (June 8, 2022) ................................................................................................ 8

DOCUMENTS FROM THE RECORD

Second Amended Complaint, DN 43 ............................................................................... *passim*

## FACTS AND PROCEDURAL HISTORY

On June 22, 2022, this Court denied the motions to dismiss that had been brought under Federal Rules 12(b)(1) and 12(b)(6) by the Defendants. ECF No. 59 at 9. Then, *sua sponte*, the Court dismissed Plaintiff Eugene Mazo's second amended complaint, ruling that Plaintiff had not pled an "injury-in-fact" and that he thus did not demonstrate Article III standing.[1] *Id.*

When this Court issued its ruling, it observed that in *Conforti, et al. v. Hanlon, et al.*, Civ. No. 20-08267, 2022 WL1744744 (D.N.J)—a case that similarly challenges New Jersey's ballot bracketing system—the plaintiffs had sufficiently pled an injury because their complaint "provided a study on the primacy effect in ballots with similar characteristics as the Bracketing Structure" at issue here, whereas Plaintiff did not provide such a study. ECF No. 59 at 7. "[T]he [*Conforti*] plaintiff's allegations, coupled with a study, provided a plausible injury-in-fact and stated a claim sufficient to survive several motions to dismiss" (*id.* at 7-8), whereas "Plaintiff does not provide a study or any other support showing that the primacy effect exists in New Jersey elections." *Id.* at 8. Because Plaintiff omitted an evidentiary or scholarly study like that referenced in the pleadings in *Conforti*, this Court ruled, Plaintiff's complaint—alleging that New Jersey's ballot bracketing system violates his First and Fourteenth Amendment rights, the Elections Clause, and Qualifications Clause—"does not plausibly allege an Article III injury on its face."[2] *Id.*

---

[1] To have standing, a plaintiff must file a complaint, pursuant to Rules 8(a)(1) and 8(a)(2), which includes "a short and plain statement" setting out the grounds for the court's jurisdiction and which states a claim for relief. Fed. R. Civ. P. 8(a)(1) and (a)(2). The elements of *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), are to be satisfied by this "short and plain statement."

[2] As a matter of federal pleading doctrine, a plaintiff is not obligated to provide evidence to the court up front—at the pleading stage of litigation. To rule otherwise would impose a "heightened pleading standard" on litigants, above what federal law requires. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit.* 507 U.S. 163, 163 (1993) ("A federal court may not apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a)—in civil rights cases [brought] under § 1983").

1

The Court dismissed Plaintiff's second amended complaint "without prejudice," but when doing so it neither granted Plaintiff leave to file an amended complaint, nor found that an amendment would be futile. This Court should have either granted Plaintiff leave to amend his complaint or made a determination that an amendment would be futile. Because it did not do this, we request that the Court correct what appears to have been an inadvertent oversight.

If Defendants argue that any amendment would be futile, their argument should be rejected. As set forth in greater detail below, Plaintiff intends to rely on several academic authorities that find that the primacy effect confers a significant advantage on bracketed candidates in New Jersey elections, while systematically disadvantaging unbracketed candidates like Plaintiff.

## LEGAL ARGUMENT

### I. FEDERAL RULES 59 AND 60 AND LOCAL RULE 7.1 ARE THE PROPER VEHICLES FOR THIS MOTION

Rule 59(e) allows a party to bring a "motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). Under this rule, such a motion "must be filed no later than 28 days after the entry of the judgment." *Id.* At the same time, Rule 60(a) allows a court to make "corrections based on clerical mistakes" and "oversights and omissions," and provides that a "court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). "The court may do so on motion or on its own, with or without notice." *Id.* Rule 60(b)(1) allows a party to seek "relief from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake,

---

Such a rule makes sense—and has been reinforced by the Supreme Court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity").

2

inadvertence, surprise, or excusable neglect." *Id.* On June 13, 2022, in *Kemp v. United States*, 142 S. Ct. 1856 (2022), the U.S. Supreme Court ruled that a Rule 60(b)(1) motion also applies to "legal errors made by judges." *Kemp*, *supra*, (slip op.) at *5-6. Rule 60(b)(1), in other words, does "nothing . . . to exclude judicial errors of law" from its purview.[3] *Id.* at *10.

Rule 59(e) "enables a party to request that a district court reconsider a just-issued judgment," *Banister v. Davis* 140 S. Ct. 1698, 1703 (2020), and "gives a district court the chance 'to rectify its own mistakes in the period immediately following' its decision." *Id.* (quoting *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 450 (1982)). "Although motions for reconsideration under Federal Rules of Civil Procedure 59(e) and 60(b) serve similar functions, each has a particular purpose." *United States v. Fiorelli*, 337 F.3d 282, 288 (3rd Cir. 2003). "Rule 60(b) provides six bases for reconsideration, including 'mistake, inadvertence, surprise, or excusable neglect' . . . In contrast, Rule 59(e) permits the filing of a motion to alter or amend a judgment. A motion under Rule 59(e) is a 'device to relitigate the original issue' decided by the district court, and used to allege legal error." *Id.* (internal citations omitted).

In addition, Local Civil Rule 7.1(i) also allows parties to bring "a motion for reconsideration." Such a motion has to be "served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge." Local Civ. P. 7.1(i). This local rule advises that a "brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed with the Notice of Motion." *Id.*

---

[3] The slip opinion is here: https://www.supremecourt.gov/opinions/21pdf/21-5726_5iel.pdf

**II.     WHEN A COURT DISMISSES A COMPLAINT WITHOUT PREJUDICE, IT MUST GRANT PLAINTIFF LEAVE TO AMEND, UNLESS SUCH AMENDMENT WOULD BE FUTILE**

The U.S. Court of Appeals for the Third Circuit has held that a when a district court dismisses a plaintiff's complaint without prejudice, it must grant the plaintiff leave to amend, unless such amendment would be futile. Failure to grant leave to amend is an abuse of discretion. This is especially true for Section 1983 civil rights cases. "[T]his court has consistently held that when an individual has filed a complaint under § 1983 which is dismissible for lack of factual specificity, he should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint and that denial of an application for leave to amend under these circumstances is an abuse of discretion." *Darr v. Wolfe*, 767 F.2d 79, 81 (3d Cir. 1985).

A party does not have to request leave to amend for it to be granted. "The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought. Circuit case law, however, holds that leave to amend must be given in this situation." *Shane v. Fauver* 213 F.3d 113, 118 (3d Cir. 2000).

It is best practice for the district court to set a time for the amendment. "[W]e suggest that district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if a timely amendment is not forthcoming within that time." *Borelli v. City of Reading*, 532 F.2d 950, 951 n.1 (3d Cir. 1976).

If a complaint is deficient, the district court must grant leave to amend even if the plaintiff does not seek leave to amend on his or her own. "[W]e have never required plaintiffs to request leave to amend following a district court's dismissal of a complaint." *District Council 47 v. Bradley*, 795 F.2d 310, 316 (3d Cir. 1986). The "District Judge erred when he dismissed the complaint without offering [plaintiff] the opportunity to amend her complaint. It does not matter

4

whether or not a plaintiff seeks leave to amend. We have instructed that if a complaint is vulnerable to . . . dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). The failure of a district court to grant leave to amend when dismissing a complaint runs "contrary to our Court's rule . . . that such leave must be granted when amendment could cure the deficiency and would not be [futile]." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

Here, the Court erred by not granting Plaintiff leave to amend his complaint. We believe this error was inadvertent because the Court dismissed Plaintiff's complaint "without prejudice." Nonetheless, the Clerk of the Court terminated the action. For the reasons set out in this motion, Plaintiff respectfully requests that the Court modify its order dismissing Plaintiff's second amended complaint by granting Plaintiff leave to file an amended complaint.

### III.     AMENDING PLAINTIFF'S COMPLAINT HERE WOULD NOT BE FUTILE

Defendants may argue that leave to amend should be denied because an amendment to Plaintiff's complaint would be futile. But this argument should be rejected because an amendment would cure the pleading deficiency identified by the Court.

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (3rd Cir. 1996). "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). Accordingly, if a claim is vulnerable to dismissal . . . but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Shane*, 213 F.3d at 115 (citations and internal quotation marks omitted).

If the Court grants Plaintiff leave to amend, Plaintiff intends to rely on several authorities that would show that bracketed candidates receive an advantage in elections over unbracketed candidates. Because Plaintiff was an unbracketed candidates, he has suffered Article III injury.

Plaintiff intends to rely upon the study by Professor Joanne M. Miller that was appended to the complaint in *Conforti v. Hanlon*, and that was kindly shared with Plaintiff by the plaintiffs in that case—and then to supplement that with several other well-known studies that document the effects of ballot positioning in New Jersey's elections. (The Miller study is attached as Exhibit A to the Declaration of Walter M. Luers (hereinafter, "Luers Dec."), being filed herewith).

The Court is already familiar with this Miller study, having relied on it in for its ruling in *Conforti* when it allowed the plaintiffs in that case to proceed to trial. Miller's study gives weight to the primacy effect. Miller explains how, "Given the consistency of the evidence of primacy effects from different scholars and across different states, years, and races, it is extremely likely that primacy effects have occurred and will occur in the New Jersey primaries." *Id.*

Miller likewise finds that "[c]andidates in New Jersey primaries who never have a chance to be listed in the first position [on the ballot] are systematically disadvantaged." *Id.*

Plaintiff also intends to rely upon two studies by Professor Julia Sass Rubin, who is a professor at the Bloustein School of Planning and Public Policy at Rutgers University. The first is Rubin's study called *Does the County Line Matter? An Analysis of New Jersey's 2020 Election Results*, NEW JERSEY POLICY PERSPECTIVE (August 13, 2020) (Luers Dec., Exh. B). Rubin has found that "structuring ballots around the county line impacts election outcomes [in New Jersey] by steering voters towards specific candidates." *Id.* Likewise, Rubin has documented how the county line system "increases voter confusion." *Id.* Finally, Rubin's study finds that, as an

6

empirical matter, "[c]andidates' share of the vote varied by as much as 50 percentage points, based on whether or not they were [featured] on the county line" and bracketed with other candidates.

In a second, earlier study, Rubin found that, "When it comes to New Jersey primary ballots . . . faulty design is a feature, not a bug," that "reflects a combination of state laws and decades of court rulings that have created a confusing patchwork of regulations." Julia Sass Rubin, *Toeing the Line: New Jersey Primary Ballots Enable Party Insiders to Pick Winners*, NEW JERSEY POLICY PERSPECTIVE (June 2020) (Luers Dec., Exh. C). In this study, Rubin explains how "[t]he state's county party organizations seem to have taken advantage of this confusion to control the design of primary ballots, as a powerful means of benefitting the election of their chosen candidates." *Id.* Both of the Rubin studies support Plaintiff's claim that he has suffered an injury and has Article III standing.

Plaintiff will also rely on a July 27, 2021, article authored by Professors Ronald Chen and John Farmer, Jr. This is Ronald Chen and John Farmer, Jr., *New Jersey's Primary Ballot Are Rigged*, THE STAR-LEDGER, July 27, 2021. (Luers Dec., Exh. D).

Ronald Chen is the former Dean of Rutgers Law School and New Jersey's former Public Advocate. Farmer is New Jersey's former Attorney General (1999-2006), a former Dean of Rutgers Law School, and the director of the Eagleton Institute for Politics at Rutgers University.

Chen and Farmer find that in most New Jersey districts, "the primary winner is . . . a foregone conclusion," which is "precisely the intention and the effect of the 'county line' primary ballot." *Id.* They find that, "Given the advantages of ballot positioning . . . very few candidates who are not favored by the county line are able to prevail in our state's primaries." *Id.* Further, they reveal how, "When an incumbent member of the Legislature does lose her seat these days, it is usually not as the legitimate result of the voters' rejection, but rather because whoever controls

the county line, often the party's county chair, simply decides for some unexplained reason to give the line to someone else, which has occurred three times in [2021]." *Id.*

Chen and Farmer are knowledgeable about this system, which, as they explain, "enables entrenched political machines to remain in power and frustrate the ambitions of emerging and historically marginalized groups." *Id.* The system has dire consequences: "A candidate, even an incumbent, must tailor his or her positions to satisfy the party establishment rather than the voters whose wishes a primary election is ostensibly designed to measure." *Id.* Chen and Farmer conclude by saying: "The implications of this for democracy in New Jersey are disturbing." *Id.*

Addition studies and authorities have measured the primacy effect in New Jersey elections and could explain to the Court how this phenomenon works.

Joey Fox, in *Geography and Ballot Design Shaped New Jersey's Congressional Primaries*, NEW JERSEY GLOBE (June 8, 2022), analyzes the most recent June 7, 2022, primary elections for several congressional districts in the state and how candidates did in those elections given their ballot placement. "Once again, ballot design . . . played a role in the results," Fox concludes. *Id.*

Matt Anderson, a lobbyist in New Jersey who has performed research on the ballot bracketing system at Seton Hall Law School, where he was Plaintiff's former law student, has authored another such study. Matt Anderson, *Drawing the Line: The Politics of New Jersey's Ballot Design*, Manuscript, Seton Hall University School of Law (2022). Anderson measured New Jersey's "punishment rates," looking at candidates who ran on the county line in one election and off the line in the next. He found that whenever state politicians lost the county line, "the majority chose not to run for re-election" and would "retire or drop out." "In New Jersey," Anderson calculated, "twenty-six incumbent state legislators lost party support between 2000 and 2021. Of

8

these, nine ran for re-election off the line, and 17 ended their campaigns and did not run in the primary. Of the nine who ran for re-election, only two were successful." *Id.*

Anderson also measured New Jersey's "drop-out rates," looking at candidates who sought the support of the party but did not get it, or who had such support but lost it. Most of these candidates opted to drop out of running. The drop-out rates in New Jersey are extremely high, higher than in other states; Anderson found that an awareness of ballot design among politically knowledgeable incumbents and challengers alike discouraged candidates from running for office without party support, making New Jersey's primary elections especially uncompetitive. *Id.*

Brett Pugach, in *The County Line: The Law and Politics of Ballot Positioning in New Jersey*, 72 RUTGERS LAW REVIEW 629 (2020), documents the history of the ballot bracketing system and explains why it exists in New Jersey politics.  (The article is voluminous but will be provided upon request). Pugach is one of the attorneys in the *Conforti* case. Pugach finds that New Jersey's "unique ballot structure intentionally and effectively deprives the state's voters from being able to replace party-backed insiders with challengers" (*id.* a 630), and that "what matters most to political candidates, at least as far as primary elections go, is that they have the support of their county party chair, rather than the support of the state's voters." *Id.* Pugach finds that "being featured on the County Line is in many instances the most important factor in determining that a candidate wins a primary election" in this state. *Id.* at 654.

Plaintiff may also rely on and cite other scholarly studies, including some of the following that have become well-known in the political science literature on the primacy effect:

1. Erik J. Engstrom & Jason M. Roberts, THE POLITICS OF BALLOT DESIGN: HOW STATES SHAPE AMERICAN DEMOCRACY (Cambridge University Press, 2020);

2. Daniel E. Ho & Kosuke Imai, *Estimating Causal Effects of Ballot Order from a Randomized Natural Experiment: The California Alphabet Lottery, 1978-2002*, 72 PUBLIC OPINION QUARTERLY 216 (2008);

9

3. Jonathan Koppell & Jennifer A. Steen, *The Effects of Ballot Position on Election Outcomes*, 66 JOURNAL OF POLITICS 267 (2004);

4. Joanne M. Miller & Jon A. Krosnick, *The Impact of Candidate Name Order on Election Outcomes*, 62 PUBLIC OPINION QUARTERLY 291 (1998);

5. Laura Miller. *Election by Lottery: Ballot Order, Equal Protection, and the Irrational Voter*, 13 LEGISLATION AND PUBLIC POLICY 373 (2010).

Each of the forgoing authorities fully supports the proposition that bracketed candidates receive a significant electoral advantage over unbracketed candidates, or those in a situation similar to Plaintiff. Each also supports the view that the "primary effect" and "positional bias" are real phenomena, ones that have been studied and documented by scholars for many years.

Finally, from a procedural standpoint, if the Court grants Plaintiff leave to amend, then the termination of this action by the Court was premature. Therefore, as part of this motion, we also request that Plaintiff's case be reinstated or that the termination be rescinded.

## CONCLUSION

For the stated reasons, Plaintiff Eugene Mazo requests that his motion brought under Rules 59(e) and 60(a) and (b)(1), as well as Local Rule 7.1(i), be granted, and that Plaintiff be given leave to file a third amended complaint and this action reinstated.

Respectfully submitted,

/s/ Walter M. Luers

Walter M. Luers, Esq.
COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
(201) 845-9600, ext. 144
wml@njlawfirm.com
*Counsel of Record for Plaintiff*

Dated: July 5, 2022