**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EUGENE MAZO**,<br><br>Plaintiff,<br><br>v.<br><br>**CHRISTOPHER J. DURKIN**, *et al.*,<br><br>Defendants. | Civil Action No. 20-8336 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendant Christopher J. Durkin (ECF No. 109), and a Motion for Summary Judgment[1] filed by Defendants E. Junior Maldonado and Joanne Rajoppi (Durkin, along with Maldonado and Rajoppi, the "Defendants") (ECF No. 110). Durkin filed a brief in support of his motion (MTD Br., ECF No. 109-1.) Maldonado and Rajoppi also filed a brief in support of their motion. (ECF No. 110-1.) Plaintiff Eugene Mazo ("Plaintiff") filed identical briefs in opposition to the two motions. (Opp.,

---

[1] Although Maldonado and Rajoppi have styled their motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the Court will construe it as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). A factual attack on subject matter jurisdiction concerns "the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citation modified). In this scenario, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims," *Mortenson v. First Federal Sav. And Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977), and "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Electronics Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). *See Shark River Cleanup Coalition v. Township of Wall*, 47 F.4th 126, 133 n.11 (construing district court's dismissal for lack of subject matter jurisdiction as a dismissal pursuant to a motion to dismiss for lack of subject matter jurisdiction although the defendant raised their argument in a motion for summary judgment) (citing *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 308 (3d Cir. 2006) (construing a party's filing by its "substance," not its "form")).
.

1

ECF Nos. 112, 113.)  Durkin filed a reply (ECF No. 114), as did Maldanado and Rajoppi (ECF No. 115).

The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Defendants' Motions.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

This matter arises out of the 2020 Democratic primaries and the New Jersey laws that affect candidate placement on the ballot.  (TAC, ECF No. 66 ¶ 1.)  In that election, Plaintiff unsuccessfully ran for U.S. Congress in New Jersey's Tenth Congressional District. (*Id.*)  After his loss, Plaintiff filed the instant lawsuit alleging that New Jersey's ballot design system is unconstitutional.  (*Id.* ¶ 4.)  At the time Plaintiff filed his complaint, New Jersey law allowed candidates who run for office to file a "joint petition with the county clerk" to have their names placed on the same line or column of the ballot. (*Id.* ¶ 84.)  New Jersey used the term "bracketed" to describe the group of joint petition candidates.  (*Id.* ¶ 92.)

Prior to an election, the county clerks would hold a ballot draw to determine the placement of the various candidates running for office.  (*Id.* ¶ 95.)  Each bracketed group of candidates was treated as a single group and chosen together as a unit, which meant that only one candidate's name had to be drawn for all the bracketed candidates to get placed on the same row or column. (*Id.* ¶ 93.)  For example, imagine a ballot that has Columns A to E.  If a county clerk decided to draw the names of U.S. Senate candidates first, then the candidates running for that open seat would automatically be placed in either column A or column B (assuming only two candidates are running for Senate).  If a candidate for the U.S. House of Representatives decided not to bracket with a candidate for the Senate, then, if the county clerk drew the names of the candidates for the

House next, the best position he or she could receive would be column C.  Meanwhile, a candidate for the House of Representatives that did bracket with a Senate candidate would automatically be placed in either column A or column B given that bracketed candidates are placed on the same line or column.  This system is referred to as the "Bracket System."

Plaintiff filed the Third Amended Complaint ("TAC") on February 21, 2023, alleging that the Bracket System violates numerous provisions of the U.S. Constitution, including the First and Fourteenth Amendment, Article I §2, the Qualifications Clause, and the Elections Clause.  Plaintiff further alleges that Defendants violated 42 U.S.C. § 1983 by depriving him of his rights, privileges, and immunities by administering an unlawful ballot bracketing system.  In the TAC, Plaintiff requests: (1) a declaration that the Bracket System is unconstitutional; (2) a declaration that the Bracket System serves no compelling governmental interest; (3) a declaration that the Bracket System is not the least-restrictive means to advance a governmental interest; (4) a declaration that the Bracket System is not appropriately tailored to a governmental interest; (5) such injunctive relief as the Court may direct; (6) costs and attorneys' fees; (7) and any other relief the Court may grant in its discretion.

Since the TAC was filed, there have been two intervening events that Defendants argue have rendered Plaintiff's claims moot.[2]  First, in an unrelated case, this Court granted a preliminary injunction that required nineteen County Clerks to structure the 2024 democratic primary ballot by office sought, as opposed to columns and rows, and to conduct separate draws for ballot position for every office and candidate ("Office Block Style").  (MTD Br. at 3.)  Following an unsuccessful appeal of the preliminary injunction, Essex County[3] and Hudson County[4] entered into a settlement

---

[2] Although Defendants filed separate motions, they each raise similar arguments challenging subject matter jurisdiction based on mootness.
[3] Defendant Durkin is the County Clerk for Essex County.
[4] Defendant E. Junior Maldonado is the County Clerk for Hudson County.

3

agreement that ensures all future primary ballots are designed using the Office Block Style (the "Settlement Agreement"). (MTD Br. at 4.) Specifically, the Settlement Agreement requires Essex County and Hudson County to "[afford] each candidate for the same office an equal chance at obtaining the first ballot position." (*Id.*)

The second intervening event occurred on March 6, 2025, when Governor Philip D. Murphy signed legislation passed by the New Jersey Legislature that requires primary election ballots to be arranged in an Office Block Style, with the order beginning with the highest federal offices under consideration and ending with political party offices (the "Ballot Legislation"). (MTD Br. at 5.) The Ballot Legislation allows for the placement of a slogan or endorsement next to or below the name of a candidate and permits candidates for the same office with multiple open seats to associate in the same office block. *Id.* Importantly, the legislation specifically prohibits a design that separates a candidate from other candidates running for the same office. (*Id.*)

## II. **JURISDICTION**

The Court has jurisdiction pursuant to 18 U.S.C. § 1331.

## III. **LEGAL STANDARD**

Under Article III of the United States Constitution, federal courts have subject matter jurisdiction only over matters involving "cases" or "controversies," which acts as an essential limitation to our system of separation of powers. *See Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 137 (3d Cir. 2009) (citation modified). "In cases involving state or local government, it also serves to protect and preserve the principle of dual sovereignty embedded in our founding charter." *Id.* To that end, subject matter jurisdiction is nonwaivable and can be raised at any time in a proceeding. *See Brown v. Phila. Housing Auth.*, 350 F.3d 338, 346–47 (3d Cir. 2003).

Within the "cases" or "controversies" requirement lies the doctrine of mootness. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013). A case becomes moot when the issues are no longer "live," or the parties lack a legally cognizable interest in the outcome. *A.S. Harrison Twp. Bd. of Educ.*, 66 F. Supp. 3d 539, 545 (D.N.J. 2014) (citing *Powel v. McCormack*, 395 U.S. 486, 496 (1969)). Moreover, "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); *see also Genesis Healthcare Corp.*, 569 at 72 ("If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot."). However, under the voluntary cessation doctrine, where a defendant voluntarily ceases the challenged conduct in response to litigation, the case might only be moot if "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 189 (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)) (internal quotation marks omitted).

**IV.   DISCUSSION**

The Court finds that the Ballot Legislation renders Plaintiff's claims moot. "Where a law is amended so as to remove its challenged features, the claim . . . becomes moot as to those features." *Khodara Envl., Inc. ex rel. Eagle Envl. L.P. v. Beckman*, 237 F.3d 186, 194 (3d Cir. 2001) (citation omitted). The key question the Court must ask is whether the amended statute prohibits the defendant from engaging in the challenged behavior again. *See Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020). However, even if the amended statute prohibits

the challenged conduct, a court must still ensure that the defendant cannot be reasonably expected to "return to its old ways later on." *Id.* at 307 (citation modified).

Here, Plaintiff alleges that when he ran for U.S. Congress in 2020, Hudson County, Essex County, and Union County violated his constitutional rights by conducting preferential ballot draws that automatically placed Plaintiff in a worse position on the ballot because of his decision not to bracket with any other candidate. (TAC ¶¶ 59, 65, 77.) Throughout the TAC, Plaintiff complains of the Bracket System and discusses various studies highlighting the negative impact, such as bias, that the Bracket System has on New Jersey elections. (TAC ¶¶ 108–23.) However, as explained, the Ballot Legislation amended the Bracket System and revised the ballots in New Jersey to follow the Office Block Style. Specifically, the Ballot Legislation now states that "candidates shall be arranged by office sought in an office block format, each office block shall be separated on the ballot from other office blocks, and candidates for the same office shall be listed within the same office block without a page break appearing between their names, and as further provided under R.S.19:23-25." N.J. Stat. Ann. § 19:23-23.2. Under R.S. 19:23-25, office blocks are arranged by the highest office first, starting with the President and ending with candidates for county party positions. *See* N.J. Stat. Ann. § 19:23-25. Moreover, each candidate running for office must be placed underneath the title of the office and position the candidate is running for. *Id.* If an office has multiple open seats, candidates may choose to be associated within the same office block. *Id.* Simply put, the Ballot Legislation expressly prohibits the exact ballot process that Plaintiff challenges as unconstitutional. Given that Defendants cannot reasonably be expected to engage in the Bracket System, Plaintiff's claims are moot. *See Hartnett*, 963 F.3d at 306.

None of Plaintiff's arguments to the contrary are persuasive. First, Plaintiff argues that the Ballot Legislation amended only part of the Bracket System, while leaving other parts of it intact.

6

(Opp. at 10.) He argues that in this case, the Bracket System arose out of various statutory authorities, court cases, and practices that developed over many decades. (*Id.* at 12.) According to Plaintiff, these disjointed statutes were not abolished wholesale by the Ballot Legislation and that "important characteristics of [the Bracket System] remain in force." (*Id.*) Plaintiff then goes on to discuss how New Jersey's slogan statutes, which authorize a candidate running in a primary to put a slogan next to his or her name on the ballot, were not repealed or amended by the Ballot Legislation. (*Id.* at 13.) Under the slogan statutes, if a candidate's slogan refers to the name of any person or to any association, the candidate must obtain the written consent of such person or association before the county can approve it. (*Id.*) According to Plaintiff, the slogan statutes violate his First Amendment rights as applied to him. (*Id.*) He then cites to several instances in which New Jersey denied his request to use slogans with the names of Russian President Vladamir Putin and Chinese President Xi Jinping because Plaintiff lacked the required consent to use their names. (*Id.* at 14.)

Although the Court doubts the merits of Plaintiff's First Amendment challenge to the slogan statutes[5], there is no need to delve into that issue now because Plaintiff does not actually make these allegations in the TAC. Rather, Plaintiff's only discussion of the slogan statutes was in the context of how candidates running for office with a common ballot slogan could be grouped together on the same line or column of the ballot. (TAC ¶¶ 80–87.) This, Plaintiff alleged, violated the First Amendment because "the state privileges [bracketed candidates'] rights of association over the rights of association of candidates who do not wish to bracket with other candidates on the ballot." (*Id.* at ¶ 138.) But as already explained, the Ballot Legislation eliminates this process.

---

[5] In an unrelated case, the Third Circuit affirmed the dismissal of Plaintiff's facial challenges to the slogan statutes based on his failure to state a claim. *See Mazo v. N.J. Sec'y of State*, 54 F.4th 124 (3d Cir. 2022).

Plaintiff's First Amendment right to association, as alleged in the TAC, is no longer implicated.[6] *See Black United Fund of N.J., Inc. v. Kean*, 763 F.2d 156, 160–61 (3d Cir. 1985) (holding the plaintiff's claims were mooted by an amendment because the "raison d'etre for the injunction no longer exists," and noting that the amendment "will give plaintiff substantially the relief it sought in the district court"). Moreover, Plaintiff cannot raise for the first time in an opposition brief an as-applied challenge to the slogan statute's requirement to obtain consent. *See Bereczki v. Mansfield Tp.*, Civ. No. 03-276, 2005 WL 3454297, at *8 (D.N.J. Dec. 13, 2005) ("[C]laim was not alleged in the complaint and cannot be raised for the first time in an opposition to a motion for summary judgment.")

Plaintiff further argues that his claims are not moot because "Defendants cannot show that there is no reasonable likelihood that unconstitutional practices will not continue to occur." (Opp. at 15.) As evidence of this, Plaintiff points to a ballot used in Newark's special school board election in which candidates with the same slogan were bracketed next each other, which pushed the candidates without slogans to the end of the ballot (the "Newark Ballot"). (*Id.* at 16–17.) However, as Plaintiff acknowledges, the Newark Ballot was unquestionably "an office block ballot," and importantly, the candidates were only grouped together because the Ballot Legislation allows candidates running for the same office to be grouped together. (*Id.* at 17.) This type of grouping permitted by the Ballot Legislation poses no problem for Plaintiff, because there can only be *one open seat* for the U.S. House of Representatives (the position Plaintiff ran for), and the Ballot Legislation only allows candidates running for the same office with *multiple open seats* to

---

[6] Plaintiff cites to *Nextel West Corp. v. Unity Township* to support his argument, in which the Third Circuit reversed a finding of mootness by the district court. 282 F.3d 257, 267 (3d Cir. 2002). However, the facts of *Nextel* are inapposite to the facts of this case. There, the plaintiff could not build a wireless tower in its desired location either before or after the city amended the challenged ordinance, which meant that "the gravamen" of the plaintiff's complaint remained. *Id.* at 263. But in this case, "the gravamen" of Plaintiff's complaint (i.e., the Bracket System) has been remedied by the Ballot Legislation, rendering Plaintiff's claims moot.

8

be grouped together if they use the same slogan. *See* N.J. Stat. Ann. § 19:23-23.2. Nowhere in the TAC does Plaintiff allege that he ran for a position with multiple open seats (nor does he claim that he plans to do so in the future). Because the "mootness inquiry . . . depends on the particular facts of each case," Plaintiff's arguments regarding other ballots and positions for offices other than the one he ran for are irrelevant and cannot save his claims. *Hartnett*, 963 F.3d at 308. Given that the gravamen of Plaintiff's TAC has been addressed by the Ballot Legislation, his claims are now moot. Accordingly, the Court finds that it lacks subject matter jurisdiction.

## V.     CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendants' Motions. This matter will be dismissed without prejudice for lack of subject matter jurisdiction. An appropriate Order will follow.

Date: November 12, 2025

                                                         s/ Zahid N. Quraishi
                                                       **ZAHID N. QURAISHI**
                                                       **UNITED STATES DISTRICT JUDGE**